CITY OF ALTUS v. WISE et al.

No. 30929. Oct. 19, 1943.

Rehearing Denied Nov. 23, 1943.

*143 P. 2d 128.*

L. A. Pelley, City Atty., of Altus, for plaintiff in error.

P. K. Morrill, of Altus, for defendants in error.

HURST, J. On October 31, 1940, Morgan Wise, a student at Altus high school, was killed, while on the grounds thereof, by coming in contact with a strand of barbed wire which had accidentally become charged with electricity. Plaintiffs, his mother and father, alleging that his death was proximately caused by the negligence of defendant, the city of Altus, sued to recover damages therefor. The verdict of the jury was for plaintiffs, and from the judgment entered thereon defendant appeals.

Defendant is engaged in the manufacture and sale of electric current. In the course of furnishing electricity to Altus high school, one of its customers, it erected on the school grounds, at a point about 25 feet southeast of the school building, a pole carrying current bearing wires and transformers. An insulated ground wire extended from the transformers down the side of the pole to its base, and was there soldered to an iron rod driven into the earth. In order to prevent automobiles from approaching the school building too closely, the school authorities had erected a barrier, consisting of a single strand of barbed wire, along the south side thereof. This wire was strung to various trees and posts at a height of about three and one-half feet from the ground, and one of its supports was the said pole belonging to defendant. It was attached thereto in such a manner that it came in contact with and rubbed against the ground wire extending up and down the pole. The barrier had been in this position off and on for more than a year prior to October 31, 1940, and its movement, caused by people crossing over it, had caused the insulation on the ground wire to wear off at its point of contact with the barbed wire. The school board, at the time of the accident, was engaged in the construction of a stone stadium, located about 400 feet east of the school building. In order to supply power to an electric concrete mixer used there, the defendant extended its lines from the pole located on the school grounds and attached them to two flood light poles, belonging to the school, and located at the north and south ends of the stadium. The wires came first to the pole at the south end of the stadium, ran down the side thereof to a switch box about six feet from the ground, crossed over to a meter, and then extended back up the pole and on over to the pole at the north end of the stadium. The switch box was grounded to a water line running near the base of the pole. The mixer could be connected to the wires on either pole, and it was moved

from one to the other frequently as the necessities of the work required. It was equipped with long wires, which, at the south pole, were ordinarily connected to the current-bearing wires at a place provided therefor about four feet above the meter.

On October 31, 1940, the mixer was located at the second pole at the north end of the stadium. The person who had last disconnected it from the south pole (and the identity of this person was never discovered) had not disengaged the wires at the place provided therefor, but instead had cut the mixer wires about four feet below such point. This left two charged dangling wires, the ends of which, when the wind blew, would contact the grounded meter box. This permitted a current of electricity to pass down the ground wire of the meter box, into the water pipe, thence through the damp earth to the ground rod at the base of the transformer pole on the school grounds, and thence up the ground wire to the transformer. A complete circuit was thus formed of which the ground wire on the transformer pole was a part. However, the resistance between the earth and the driven ground rod was such that it did not permit the passage of all the current carried by the rest of the circuit. The result was that a part of the electricity spread out into the surrounding damp earth, seeking a path of less resistance back into the circuit. Since the insulation on the ground wire was worn off at its point of contact with the barbed wire, a condition resulted whereby any contact between the earth and the barbed wire would permit the passage of such excess electricity back into the main circuit through the secondary circuit thus formed. On October 31, 1941, Morgan Wise, preparatory to crossing the barbed wire, grasped the same with his hand, thus closing the secondary circuit with his body, and was instantly killed.

At the trial, plaintiffs contended that the death of Morgan Wise was caused by the concurring negligence of some unknown third person in cutting the mixer wires and the negligence of defendant (a) in permitting the piece of barbed wire to remain attached to the transformer pole until it had worn the insulation from the ground wire thereon, and (b) in failing to install a ground rod of sufficient size at the base of such pole.

Although the proof thereon was conflicting, there was evidence from which the jury could find that defendant was guilty of both acts of negligence as charged. Defendant made no effort to prove that it had ever inspected the transformer pole, and it was undisputed that the barbed wire had been attached thereto continuously for four or five months. There was also evidence that the ground rod was of less size than that considered standard by electricians generally, and that if it had been of proper size, the accident would not have occurred.

1. Defendant first contends that such negligence, even though proved, was not the proximate cause of the death of Morgan Wise. It asserts that the intervening negligence of the unknown third person in cutting the mixer wires was the proximate cause thereof, and that its own negligence was only the remote cause.

The general rule is that the causal connection between an act of negligence and an injury is broken by the intervention of a new, independent, and efficient cause, which was neither anticipated nor reasonably foreseeable. 38 Am. Jur. 724; Zipp's, Shearman and Redfield on Negligence (Rev. Ed.) § 37. In such case the negligence of the original wrongdoer is not actionable because it is only the remote, rather than the proximate, cause of the injury. 38 Am. Jur. 725. Thus where a negligent act merely creates a condition making an injury possible, and a subsequent independent act causes the injury, the original act of negligence is not ordinarily the proximate cause thereof. City of Okmulgee v. Hemphill, 183 Okla. 450, 83 P. 2d 189; Munroe v. Schoenfeld & Hunter Drilling Co., 178 Okla. 149, 61 P. 2d 1045.

However, in order to relieve the one guilty of the first act of negligence of responsibility, the intervening cause must entirely supersede the original negligence. In other words, it must be independent of the original act and adequate of itself to bring about the injurious result. Southwestern Light & Power Co. v. Fowler, 119 Okla. 244, 249 P. 961; 38 Am. Jur. 723; Zipp's, Shearman & Redfield on Negligence (Rev. Ed.) § 38. Consequently, where an act of negligence is not superseded by a second cause, but continues to operate, so that the injury is the result of both causes acting in concert, each act may be regarded as the proximate cause thereof. 45 C. J. 920; 38 Am. Jur. 715; Zipp's, Shearman & Redfield on Negligence (Rev. Ed.) § 39. And where separate and independent acts of negligence combine to produce an injury, each wrongdoer is responsible for the entire result. Northup v. Eakes, 72 Okla. 66, 178 P. 266.

Furthermore, if the intervening cause was foreseen, or might reasonably have been foreseen, by the wrongdoer, his negligence may be considered as a proximate cause of the injury and he may be held liable notwithstanding the intervening cause. In such case the negligence continues and operates contemporaneously with the anticipated intervening cause and may be regarded as a concurrent cause of the resulting injury. Oklahoma Natural Gas Co. v. Courtney, 182 Okla. 582, 79 P. 2d 235; 38 Am. Jur. 727. In such case, of course, it is not necessary that the precise form of the intervening cause should have been anticipated. It is enough if it could have been reasonably expected that a cause would intervene in a way likely to produce an injury similar to that actually suffered. Oklahoma Natural Gas Co. v. Courtney, above; 29 C. J. S. 605, note 26; 45 C. J. 918. These general principles are applicable in determining the liability of electrical companies for injuries resulting from the escape of electric current. 18 Am. Jur. 449; 29 C. J. S. 603, note 18; 24 L.R.A. (N.S.) 978 note; 7 L.R.A. (N.S.) 293 note.

Although, under our view of the evidence, the trial court might have confined its instructions to the question of concurring negligence, it took a view more favorable to defendant and advised the jury that defendant, even though guilty of negligence in the first instance, would not be liable unless it could reasonably have anticipated the intervening cause and subsequent injury.

We proceed, then, to determine whether there was evidence from which the jury could find that the intervening cause could have been foreseen.

Companies engaged in the business of conducting electricity over high voltage wires are bound to exercise much greater precaution in its use than if the property was of a less dangerous character. City of Marlow v. Parker, 177 Okla. 537, 60 P. 2d 1044; Southwestern Light & Power Co. v. Fowler, above; La Dow v. Oklahoma Gas & Electric Co., 28 Okla. 15, 119 P. 250. They are, therefore, bound to anticipate more remote possibilities of danger. There was evidence that the ground wire, and consequently the contacting barbed wire, were apt to become charged if either of the current-bearing wires became grounded in any manner, and that current-bearing wires do accidentally become grounded about 500 times a year in the United States. Of course, no one could foresee the exact manner in which this might occur, but under such evidence the jury could properly find that the defendant should have reasonably anticipated the possibility of the current-bearing wires becoming grounded by some means, and should have guarded against injury likely to result therefrom. The question was one upon which reasonable men might differ, and in such a case we will not disturb the jury's finding. Chicago, R. I. & P. Ry. Co. v. McCleary, 175 Okla. 347, 53 P. 2d 555; Oklahoma Natural Gas Co. v. Courtney, above.

2. After the cause had been submitted to the jury and it had deliberated for some time, the jury returned into court and made the following inquiry:

"Does the defendant have to be found entirely guilty of negligence to be found

292

guilty at all, or, in other words, according to the instructions, can partial guilt be established?"

Thereupon the court gave two additional written instructions. By the first of these the jury was told that before it could find for plaintiff it must find defendant guilty of some act of negligence which "was the proximate cause of the injury complained of." By the second, the court restated to the jury that even though defendant was guilty of negligence, it could not be held liable for the independent act of a third party operating through a condition created by defendant's original negligence, unless the independent act could have been reasonably anticipated. The jury then retired to further consider its verdict. Sometime later it again returned into court without having arrived at a verdict, and the court thereupon instructed it in writing that if the defendant was guilty of any negligence, however slight, which was the proximate cause of the injury "as proximate cause is defined in the instructions," plaintiff would be entitled to recover, even though some third party was also guilty of negligence. This, as we have seen, was a correct statement of the law. Defendant argues, however, that the court should have restated the entire law of proximate cause, and that its failure to do so constituted error. We do not agree. The court specifically referred the jury to the instructions already given for a definition of the term "proximate cause." By those instructions the court had already fully and correctly defined the term, and we see no reason why the definition should have been repeated. Every separate paragraph of the instructions need not define every term therein used. It is sufficient if the instructions, when considered as a whole, correctly state the law applicable to the issues. Hall & Briscoe v. Strode, 163 Okla. 11, 20 P. 2d 186.

3. Defendant finally contends that plaintiffs are precluded from the recovery of costs herein by their failure to plead or prove that they had presented their claim for damages to the city council for consideration as re-quired by 11 O. S. 1941 § 674. Since defendant did not present this matter to the trial court so as to give it an opportunity to rule thereon, we will not consider it here. However, if the costs were erroneously assessed against defendant, the matter may be corrected by the trial court upon proper motion. City of Kingfisher v. Zalabak, 77 Okla. 108, 186 P. 936.

Judgment affirmed.

CORN, C. J., and RILEY, OSBORN, and ARNOLD, JJ., concur. GIBSON, V. C. J., and BAYLESS, WELCH, and DAVISON, JJ., dissent.